**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIAM BUTLER, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| ZENDESK, INC., MIKKEL SVANE, ARCHANA AGRAWAL, CARL BASS, MIKE CURTIS, MIKE FRANDSEN, BRANDON GAYLE, STEVE JOHNSON, HILARIE KOPLOW–MCADAMS, THOMAS SZKUTAK, and MICHELLE WILSON, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Liam Butler ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Zendesk, Inc. ("Zendesk" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"), collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to a consortium of investment firms consisting of Hellman & Friedman LLC

("Hellman") and Permira Advisers LLC ("Permira") through subsidiary Zoro BidCo, Inc. ("Parent") and merger vehicle Zoro Merger Sub, Inc. ("Merger Sub") (collectively with Parent, Hellman and Permira, the "Consortium") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction valued at approximately $10.2 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 24, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Consortium will acquire all of the remaining outstanding shares of Zendesk' common stock at a price of $77.50 per share in cash. As a result, Zendesk will become an indirect wholly-owned subsidiary of Consortium.

3.      Thereafter, on July 25, 2022, Zendesk filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      Significantly, the Preliminary Proxy statement fails to disclose whether a committee of disinterested directors was formed to oversee and evaluate the Proposed Transaction, and if so, what powers that committee had in evaluating a potential transaction, including whether it had the power to veto a transaction not in the best interests of shareholders.

6.      Additionally, the Preliminary Proxy fails to disclose the extent of influence exerted by activist investor JANA Partners ("JANA") in respect to the Proposed Transaction, including

the effect JANA's initiation of a proxy contest, litigation, and appointments of alternative board directors had on the sales process.

7.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Zendesk, provided by Zendesk management to the Board and the Board's financial advisors Qatalyst Partners LP ("Qatalyst") and Goldman Sachs & Co. LLC ("Goldman Sachs") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Qatalyst and Goldman Sachs, and provide to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9.      Plaintiff is a citizen of Denmark and, at all times relevant hereto, has been a Zendesk stockholder.

10.      Defendant Zendesk is a software development company, provides software as a service solutions for organizations in the United States, Europe, the Middle East, Africa, the Asia Pacific, and internationally. Zendesk is incorporated under the laws of the State of Delaware and has its principal place of business at 989 Market Street San Francisco, California 94103.  Shares of Zendesk common stock are traded on the New York Stock Exchange under the symbol "ZEN".

11.      Defendant Mikkel Svane ("Svane") has been a Director of the Company at all relevant times.  In addition, Svane serves as the Company's Chief Executive Officer ("CEO"), Chairman of the Company Board, and founder of the company.

12.     Defendant Archana Agrawal ("Agrawal") has been a director of the Company at all relevant times.

13.     Defendant Carl Bass ("Bass") has been a director of the Company at all relevant times.

14.     Defendant Mike Curtis ("Curtis") has been a director of the Company at all relevant times.

15.     Defendant Mike Frandsen ("Frandsen") has been a director of the Company at all relevant times.

16.     Defendant Brandon Gayle ("Gayle") has been a director of the Company at all relevant times.

17.     Defendant Steve Johnson ("Johnson") has been a director of the Company at all relevant times.

18.     Defendant Hilarie Koplow–McAdams ("Koplow–McAdams") has been a director of the Company at all relevant times.

19.     Defendant Thomas Szkutak ("Szkutak") has been a director of the Company at all relevant times.

20.     Defendant Michelle Wilson ("Wilson") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 11 - 20 are collectively referred to as the "Individual Defendants."

22.     Non-Party Consortium consists of two privately held investment firms and two entities created to facilitate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Zendesk maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

26.     Zendesk, Inc., a software development company, provides software as a service solutions for organizations in the United States, Europe, the Middle East, Africa, the Asia Pacific, and internationally. Its flagship product is Zendesk Support, a system for tracking, prioritizing, and solving customer support tickets across various channels. The company also offers Zendesk Chat, a live chat and messaging software to connect with customers on websites and mobile devices applications; Zendesk Talk, a cloud-based call center software; Zendesk Guide, a knowledge base that powers customer self-service and support agent productivity; Zendesk Gather, a community forum software that allows customer end-users to connect and collaborate; Zendesk Explore, which provides analytics for organizations to measure and enhance the customer experience; and Zendesk Sell, a sales customer relationship management (CRM) product solution to enhance productivity, processes, and pipeline visibility. In addition, it provides Zendesk Sunshine, a CRM platform; Sunshine Conversations, a messaging platform solution; Zendesk Developer Tools, a combination of application programming interfaces, web widget, and mobile software development kits; Zendesk APIs that allow users to build custom integrations and interact with Zendesk data; and Zendesk Apps that enable organizations to customize Zendesk product and

platform solution interfaces and optimize workflow through plug-ins, as well as Zendesk Suite, an omnichannel offering, which combines its solutions. The company was founded in 2007 and is headquartered in San Francisco, California.

27.   The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the April 28, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted such milestones as First quarter revenue increased 30% year-over-year to $388.3 million.

28.   Speaking on these positive results, CEO Defendant Svane commented on the Company's positive financial results as follows, "We had a strong start to 2022 with the highest first quarter revenue increase in the company's history, growing 30% year-over-year. Both our GAAP and non-GAAP gross margins in the first quarter improved both as compared to last quarter as well as compared to our first quarter last year while non-GAAP operating margin came in at the low-end of our range as we continue to invest in growth. We remain confident in and committed to our full-year guidance of 7.5% non-GAAP operating margin."

29.   These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Zendesk.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

30.   Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Zendesk to enter into the Proposed Transaction without providing requisite information to Zendesk stockholders such as Plaintiff.

***The Flawed Sales Process***

31.   As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     The Preliminary Proxy Statement fails to adequately disclose why it was necessary to retain the services of two financial advisors in evaluating the Proposed Transaction.

33.     Significantly, the Proposed Transaction has been subject to significant activist influence.  Following a February 28, 2022 letter from JANA demanding either a change in board composition or a sale, the Preliminary Proxy reveals that JANA maintained significant involvement in the transaction process, including the board consulting JANA at various stages of the negotiation and deliberation process.

34.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

### The Proposed Transaction

36.     On June 24, 2022, Zendesk and Consortium issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SAN FRANCISCO – June 24, 2022 –** Zendesk, Inc. (NYSE: ZEN) today announced it has entered into a definitive agreement to be acquired by an investor group led by leading global investment firms Permira and Hellman & Friedman LLC ("H&F") in an all-cash transaction that values Zendesk at approximately $10.2 billion. Under the terms of this agreement, Zendesk shareholders will receive $77.50 per share. The offer represents a premium of approximately 34% over Zendesk's closing stock price on June 23, 2022, the last full trading day prior to this announcement.

> "This is the start of a new chapter for Zendesk with partners that are aligned with the strength of our agile products and talented team, and are committed to providing the resources and expertise to continue our growth trajectory," said Mikkel Svane, founder, chairman and CEO, Zendesk. "With Hellman & Friedman and Permira's support, we'll continue to execute on our long-term strategy with our customers as

our top priority, taking full advantage of the opportunity we see to help businesses navigate the ever changing expectations and demands of their customers."

"The Board conducted an extensive strategic review over a three month period, receiving an actionable offer from Hellman & Friedman and Permira after the termination of our formal process," said Carl Bass, lead independent director, Zendesk. "This transaction provides certainty of value for our shareholders at a significant premium to Zendesk's trading price. The extensive strategic review process included the evaluation of both standalone and transactional alternatives and considered a range of factors including current and anticipated market conditions, business momentum and long-term outlook. During this period, we also worked constructively with major shareholders. The Board concluded that this transaction was the best alternative and the Board voted unanimously to support this transaction."

"Zendesk has reimagined customer service software and empowers businesses to transform how they communicate with their customers in an increasingly digital world. We believe Zendesk is uniquely positioned to enable meaningful interactions and deliver compelling business outcomes across any channel," said Ryan Lanpher, Partner at Permira. "We look forward to partnering with Zendesk's management team and talented employees to help them accelerate product innovation and achieve their growth ambitions," added Brian Ruder, Partner and Co-Head of Technology at Permira.

"Over the past 15 years, Zendesk has revolutionized how companies serve their customers and has become a leading platform within the customer experience ecosystem. We deeply believe in the company's growth opportunity as it continues to help businesses across the world delight their customers," said Tarim Wasim, Partner at Hellman & Friedman. "We see tremendous value in Zendesk's platform and ability to grow at scale. Its intuitive yet powerful offering serves over 100,000 companies, ranging from the smallest businesses to the largest enterprises," added Stephen Ensley, Partner at Hellman & Friedman.

**Transaction Details**

In addition to Hellman & Friedman and Permira, the investor group includes a wholly-owned subsidiary of the Abu Dhabi Investment Authority (ADIA), and GIC.

The transaction, which has been unanimously approved by Zendesk's Board of Directors, is expected to close in the fourth quarter of this year and is subject to customary closing conditions, including Zendesk stockholder approval. Hellman & Friedman and Permira have arranged for debt and equity financing commitments for the purpose of financing the transaction. Upon closing of the transaction, Zendesk will operate as a privately-held company.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Advisors**

Qatalyst Partners and Goldman Sachs & Co. LLC are serving as financial advisors to Zendesk in connection with the proposed transaction. Wachtell, Lipton, Rosen & Katz is serving as Zendesk's legal advisor.

Morgan Stanley & Co. LLC is serving as financial advisor to the investor group. Fried, Frank, Harris, Shriver & Jacobson LLP is serving as M&A counsel to the investor group and to Permira. Simpson Thacher & Bartlett LLP is serving as financing counsel to the investor group. Kirkland & Ellis LLP is serving as counsel to Hellman & Friedman.

About Zendesk

Zendesk started the customer experience revolution in 2007 by enabling any business around the world to take their customer service online. Today, Zendesk is the champion of great service everywhere for everyone, and powers billions of conversations, connecting more than 100,000 brands with hundreds of millions of customers over telephony, chat, email, messaging, social channels, communities, review sites and help centers. Zendesk products are built with love to be loved. The company was conceived in Copenhagen, Denmark, built and grown in California, taken public in New York City, and today employs more than 6,000 people across the world. Learn more at www.zendesk.com.

**About Hellman & Friedman**

Hellman & Friedman is a preeminent global private equity firm with a distinctive investment approach focused on a limited number of large-scale equity investments in high quality growth businesses. H&F seeks to partner with world-class management teams where its deep sector expertise, long-term orientation and collaborative partnership approach enable companies to flourish. H&F targets outstanding businesses in select sectors including software & technology, financial services, healthcare, consumer & retail, and other business services.

Since its founding in 1984, H&F has invested in over 100 companies. The firm is currently investing its tenth fund, with $24.4 billion of committed capital, and has over $85 billion in assets under management as of March 31, 2022. Learn more about H&F's defining investment philosophy and approach to sustainable outcomes at www.hf.com.

**About Permira**

Permira is a global investment firm that backs successful businesses with growth ambitions. Founded in 1985, the firm advises funds with total assets under management of US$65bn+ and makes long-term majority and minority investments across two core asset classes, private equity and credit. The Permira private equity

funds have made approximately 300 private equity investments in four key sectors: Technology, Consumer, Healthcare and Services. Permira employs over 450 people in 16 offices across the United States, Europe and Asia.

The Permira funds have an extensive track record in technology investing, having invested US$15.4 billion in 48 companies across SaaS, cybersecurity, digital commerce, fintech and online marketplaces. The Permira funds have previously backed and helped scale some of the largest and fastest-growing technology businesses globally, including Clearwater Analytics, G2, Genesys, Informatica, Klarna, Mimecast, McAfee, Seismic and TeamViewer.

### Potential Conflicts of Interest

37.     The breakdown of the benefits of the deal indicate that Zendesk insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Zendesk.

38.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Named Executive Officers and Directors: | Amount and Nature of Beneficial Ownership | Ownership % |
|---|---|---|
| Mikkel Svane | 2,533,075 | 2.1% |
| Shelagh Glaser | 36,079 | * |
| Alex Constantinople | 26,211 | * |
| Adrian McDermott | 543,824 | * |
| Norman Gennaro | 139,109 | * |
| Elena Gomez | 4,665 | * |
| Marc Cabi | 335 | * |

COMPLAINT

| | | |
|---|---|---|
| Archana Agrawal | 1,962 | * |
| Carl Bass | 67,204 | * |
| Michael Curtis | 44,262 | * |
| Michael Frandsen | 15,445 | * |
| Brandon Gayle | 2,324 | * |
| Steve Johnson | 2,303 | * |
| Hilarie Koplow-McAdams | 14,761 | * |
| Thomas Szkutak | 10,430 | * |
| Ronald Pasek | 0 | * |
| **All directors and executive officers as a group (18 persons)** | **3,695,032** | |
| **5% or Greater Stockholders** | | |
| Capital World Investors | 6,629,208 | 5.4% |
| The Vanguard Group | 11,461,432 | 9.3% |
| BlackRock, Inc. | 6,674,928 | 5.41% |
| **Total of all Directors, Officers, and >5% Shareholders** | **28,460,600** | **23.1%** |

39.    Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Preliminary Proxy Statement fails to give an adequate accounting of these awards.

40.    In addition, certain employment agreements with certain Entasis executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Named Executive Officer | Cash ($) | Equity($) | Perquisites / Benefits($) | Total ($) |
|---|---|---|---|---|
| Mikkel Svane | $1,200,000 | $6,650,026 | $28,869 | $7,878,895 |
| Shelagh Glaser | $900,000 | $5,713,145 | $27,744 | $6,640,889 |

COMPLAINT

| | | | | |
|---|---|---|---|---|
| Alex Constantinople | $672,000 | $3,679,623 | — | $4,351,623 |
| Adrian McDermott | $770,000 | $4,368,532 | $28,869 | $5,167,401 |
| Norman Gennaro | $1,000,000 | $6,890,563 | $28,869 | $7,919,432 |

41.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     Thus, while the Proposed Transaction is not in the best interests of Zendesk, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Preliminary Proxy Statement**

43.     On July 25, 2022, the Zendesk Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

      a.     Adequate disclosure as to why it was necessary to retain two financial advisors;

b.   Adequate disclosure as to the extent of involvement by JANA in the sales process as well as the extent of influence JANA had on the Proposed Transaction;

c.   Whether a committee of disinterested directors was appointed to oversee the sales process, and if so, what powers that committee had in evaluating a potential transaction;

d.   Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including The Consortium, would fall away; and

f.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Zendesk's Financial Projections*

45.   The Preliminary Proxy Statement fails to provide material information concerning financial projections for Zendesk provided by Zendesk management to the Board, Qatalyst, and Goldman Sachs and relied upon by Qatalyst and Goldman Sachs in their analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

46.   Notably the Preliminary Proxy Statement reveals that as part of its analyses, Qatalyst reviewed, "certain internal financial analyses and forecasts for Zendesk" prepared by Company management.

47. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Zendesk management provided to the Board, Qatalyst, and Qatalyst. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

48. With regard to the *Certain Financial Projections* prepared by Zendesk, the Preliminary Proxy Statement fails to disclose material line items for important metrics.

   a. With regard to *March 2022 Case,* the Preliminary Proxy Statement fails to disclose the following:

      i. Operating Income, including all underlying inputs, metrics, and assumptions, including specifically: GAAP operating income (loss), share-based compensation, employer tax related to employee stock transactions, amortization of purchased intangibles, acquisition-related expenses, and amortization of share-based compensation capitalized in internal-use software;

      ii. Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions, including specifically: impact of cash taxes paid, net impact of depreciation and amortization, amortization of deferred costs, capital expenditures, changes in net working capital, and deferred revenue, changes in depreciation and amortization, purchase of property & equipment, net working capital, and acquisition-related expenses; and

      iii. Unlevered Free Cash Flow (Incl. SBC), including all underlying inputs, metrics, and assumptions, including specifically: Stock based Compensation, impact of cash taxes paid, share-based compensation expense, net impact of depreciation and amortization, amortization of

deferred costs, capital expenditures, changes in net working capital, deferred revenue, changes in depreciation and amortization, purchase of property & equipment, net working capital, and acquisition-related expenses.

b. With regard to *June 2022 Case,* the Preliminary Proxy Statement fails to disclose the following:

   i. Operating Income, including all underlying inputs, metrics, and assumptions, including specifically: GAAP operating income (loss), share-based compensation, employer tax related to employee stock transactions, amortization of purchased intangibles, acquisition-related expenses, and amortization of share-based compensation capitalized in internal-use software;

   ii. Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions, including specifically: impact of cash taxes paid, net impact of depreciation and amortization, amortization of deferred costs, capital expenditures, changes in net working capital, and deferred revenue; and

   iii. Unlevered Free Cash Flow (Incl. SBC), including all underlying inputs, metrics, and assumptions, including specifically: Stock based Compensation, impact of cash taxes paid, share-based compensation expense, net impact of depreciation and amortization, amortization of deferred costs, capital expenditures, changes in net working capital, deferred revenue.

49.    The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50.    The Preliminary Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various cases of projections rely.

51.    This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.    Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Qatalyst and Goldman Sachs financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

53.    In the Preliminary Proxy Statement, Qatalyst describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

54.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

  a.    The inputs used for the impact of stock based compensation for calendar years 2022-2026;

  b.     The inputs, metrics, and assumptions used to determine a range of discount rates of 9.5% to 13.0%;

  c.    The weighted average cost of capital for the Company;

  d.    The number of fully diluted outstanding shares of Company common stock;

  e.    The inputs, metrics, and assumptions used to determine enterprise value to next-twelve-months' estimated UFCF multiples of 16.0x to 25.0x;

  f.    The balance of cash and cash equivalents of Zendesk as of March 31, 2022;

g.   The implied net present value of estimated federal tax savings resulting from operating losses and research and development tax credits for calendar years 2028 and beyond;

h.   The face value of the Company's outstanding convertible debt as of March 31, 2022;

i.   The exact number and associated value of restricted stock units, performance stock units, stock options and in-the-money convertible notes;

j.   The value of future equity compensation used for purposes of this analysis; and

k.   The exact value provided by Company management for estimates of future dilution.

55.   With respect to the *Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a.   The inputs, metrics, and assumptions used to determine a representative multiple range of 3.0x to 6.0x; and

b.   The number of fully diluted outstanding shares of Company common stock.

56.   With respect to the *Selected Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a.   The specific date on which each transaction closed;

b.   The value of each transaction compared;

c.   The number of fully diluted outstanding shares for the Company; and

d.   The inputs, metrics, and assumptions used to determine a representative LTM revenue multiple range of 6.3x to 13.2x; and

e.   The inputs, metrics, and assumptions used to determine a NTM revenue representative multiple range of 5.3x to 10.9x.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

57.   In the Preliminary Proxy Statement Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

58.   With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The inputs, metrics, and assumptions used to determine a range of discount rates ranging from 10.0% to 12.0%;

      b.   The weighted average cost of capital for the Company;

      c.   The inputs, metrics, and assumptions used to determine a range  of NTM UFCF multiples of  20.0x to 32.5x;

      d.   The inputs, metrics, and assumptions used to determine implied perpetuity growth rates ranging from 5.0% to 8.9%;

      e.   The Company's cost of long-term debt;

      f.   The Company's future applicable marginal cash tax rate;

      g.   The beta for the Company;

      h.   The illustrative terminal value to NTM UFCF multiple range calculate for the Company;

      i.   The amount of net cash as of March 31, 2022;

      j.   The range of illustrative equity values calculated for the Company; and

      k.   The number of fully diluted outstanding shares of Zendesk common stock.

59.   With respect to the *Illustrative Present Value of Future Share Price*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The inputs, metrics, and assumptions used to determine a range of multiples of

enterprise value to NTM revenue of 4.5x to 8.0x;

b. The amount of forecasted net cash as of December 31 for each of the fiscal years 2022 to 2024 for the Company;

c. The specific range of illustrative equity values derived for the Company;

d. The exact number of projected year-end fully diluted outstanding shares of Zendesk common stock for each of the fiscal years 2022 to 2024;

e. The inputs, metrics, and assumptions used to determine an illustrative discount rate of 10.9%;

f. The cost of equity for the Company;

g. The beta for the Company;

h. The inputs, metrics, and assumptions used to determine enterprise value to growth-adjusted EV/NTM revenue multiples of 0.2375x to 0.3500x;

i. The amount of Zendesk's forecasted net cash as of December 31 for each of the fiscal years 2022 to 2024; and

j. The implied per share future equity values used.

60. With respect to the *Selected Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific date on which each transaction closed;

b. The value of each transaction compared;

c. The number of fully diluted outstanding shares for the Company; and

d. The inputs, metrics, and assumptions used to determine an EV/LTM Revenue multiple range of 5.3x – 29.2x.

61. With respect to the *Precedent M&A Premia* section, the Preliminary Proxy Statement fails to disclose the following:

a. The specific transactions compared;

b. The closing price of each transaction compared; and

c. The inputs, metrics, and assumptions used to determine a reference range of

illustrative premia of 20% to 56%.

62.     With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The inputs, metrics, and assumptions used to determine an EV/NTM unlevered free cash flow range of 20x – 37x.

63.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

64.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Zendesk stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

67.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

68.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

69.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

70.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

71.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

72.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Zendesk' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a

result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

77.     The Individual Defendants acted as controlling persons of Zendesk within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Zendesk to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Zendesk and all of its employees.  As alleged above, Zendesk is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: July 29, 2022                    **BRODSKY & SMITH**

                                By:    */s/ Evan J. Smith*
                                       Evan J. Smith, Esquire (SBN 242352)
                                       esmith@brodskysmith.com
                                       Ryan P. Cardona, Esquire (SBN 302113)
                                       rcardona@brodskysmith.com
                                       9595 Wilshire Blvd., Ste. 900
                                       Phone: (877) 534-2590
                                       Facsimile (310) 247-0160

                                       *Attorneys for Plaintiff*

COMPLAINT